IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BITCOIN DEPOT OPERATING LLC, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) Case No: 1:25-cv- |
| FAREWAY STORES, INC. D/B/A FAREWAY MEAT AND GROCERY, | ) ) JURY DEMAND ) ) |
| *Defendant.* | ) ) |

## COMPLAINT

Plaintiff, Bitcoin Depot Operating LLC ("Plaintiff" or "Bitcoin Depot"), by and through its undersigned counsel hereby for its Complaint against defendant, Fareway Stores, Inc. d/b/a Fareway Meat and Grocery ("Defendant" or "Fareway") alleges and states as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract resulting from Defendant's breaches of a Master Placement Agreement ("MPA") and Master Placement Agreement Form ("MPAF") (collectively the "Agreement"), incorporated by reference in the MPA, entered into by Plaintiff and Defendant on or about April 9, 2024. On or about February 24, 2025, Defendant, based on false, baseless and pretextual allegations that Plaintiff breached the MPA by failing to produce copies of its compliance programs and that Plaintiff's Bitcoin ATM's ("Kiosks") are instrumentalities of fraud, terminated the Agreement and shut down Plaintiff's Kiosks by disconnecting them from power and covering them from public view, making them inaccessible and unavailable for use by Plaintiff's customers.

2. Defendant told Plaintiff that if the Kiosks were not removed within thirty (30) days, it will consider the machines abandoned and presumably will have them removed and destroyed.

It was not until Plaintiff sought preliminary injunctive relief in the Court of Chancery of the State of Delaware that Defendant agreed not to discard the Kiosks.

3. The Kiosks remained deactivated for three (3) months. Defendant, purportedly as a result of the passage of new legislation in the State of Iowa with regard to the operation of Bitcoin ATMs, contacted Plaintiff stating that it planned to reactivate the Kiosks on May 24, 2025, a date prior to the effective date of the new legislation.

4. Plaintiff, however, is not excused from breaching the Agreement by improperly terminating the Agreement, wrongfully deactivating the Kiosks and keeping them shut down for three (3) months. As a result, Plaintiff has suffered, and will continue to suffer, damages.

## THE PARTIES

5. Plaintiff, Bitcoin Depot is a Delaware limited liability company with its principal place of business located at 2870 Peachtree Road, #327, Atlanta, Georgia 30305.

6. Upon information and belief, Defendant is an Iowa corporation with its corporate headquarters located at 8800 W 62nd Avenue, Johnston, Iowa, 50131.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

8. The parties have consented to be subject to the exclusive jurisdiction of courts in the State of Delaware and to have the application of Delaware law apply for any disputes related to the Agreement. Accordingly, venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## FACTS

9. Plaintiff owns or leases kiosks and/or machines, known as Bitcoin ATM's, *i.e.*, the Kiosks, that facilitate the purchase and sale of virtual currency and/or certain other functions relating to the purchase and sale of cryptocurrency. Plaintiff operates thousands of Kiosks across North America.

10. Defendant is a Midwest grocery company operating more than 140 grocery store locations in Iowa, Illinois, Kansas, Minnesota, Missouri, Nebraska, and South Dakota.

11. On or about April 9, 2024, Plaintiff and Defendant entered into the MPA and the MPAF.

12. Pursuant to the Agreement, Plaintiff was permitted to install, operate, and maintain Kiosks in 66 Fareway locations for an agreed upon fee as set forth in the MPAF.

13. As set forth in the Agreement, the initial term of the parties' Agreement is four years.

14. Section 2 of the MPA sets forth the "Host Responsibilities" of Defendant, which include but are not limited to: (i) ensuring that each Kiosk shall at all times remain available for use by Plaintiff's customers during normal business hours; (ii) not interfering with the availability or operation of a Kiosk during normal business hours; (iii) ensuring that adequate space and sufficient electrical supply (and means to connect that electrical supply to the Kiosk and related signage), is provided to the Kiosk; and (iv) not actually or attempting to cover, obscure, modify, or deface any markings, advertising materials, or other such features of the Kiosk.

15. Section 8, subsection 4 of the MPA addresses "Deliberate Interruption Reimbursement" and provides that if Defendant deliberately interferes with, disconnects,

deactivates, of otherwise impairs or blocks any Kiosks, Plaintiff will be excused from paying any fees for so long as such Kiosks remain in such state, and Defendant shall be liable to Plaintiff in the amount of $100 per day per Kiosk until each Kiosk is reconnected, reactivated and the interference is removed.

16. As set forth in Paragraph 32 of the MPA, the remedies available to each party shall be cumulative and not exclusive, and the election of one remedy shall not preclude the election of or availability of other remedies.

17. Section 5 of the MPA sets forth the "Company Obligations" of Plaintiff, which, among other things, provides that Plaintiff shall maintain an anti-money laundering ("AML"), know your customer ("KYC"), and general Bank Secrecy Act ("BSA") compliance program.

18. At all applicable times, Plaintiff maintained AML, KYC, and general BSA compliance programs, and Plaintiff has provided Defendant with evidence demonstrating the same.

19. Nevertheless, pursuant to a letter dated February 24, 2025, Defendant wrongfully terminated the Agreement and terminated operation of the Kiosks in all its stores by disconnecting power to the Kiosks and covering them from public view.

20. On or about December 27, 2024, Defendant emailed Plaintiff about certain complaints regarding the operation of the Kiosks, including alleged instances of customers being scammed into fraudulently placing funds in the Kiosks.

21. Plaintiff provided a fulsome response on or about January 10, 2020, explaining its robust compliance framework and emphasizing its commitment to providing secure and compliant services through the Kiosks.

22. Thereafter, Defendant, via letter dated February 6, 2025, requested copies of Plaintiff's AML, KYC and BSA compliance policies. Plaintiff responded and provided copies of the policies via email on February 11, 2025.

23. Nonetheless, on February 24, 2025, Defendant, without providing any other notice, wrongfully terminated the Agreement and deactivated the Kiosks in its stores, falsely claiming that it did not receive the compliance policies. Defendant further stated that if Plaintiff does not remove its machines from the applicable stores within 30 days, it will consider the machines abandoned and will act accordingly as permitted under Iowa law.

24. Defendant terminated the Agreement without providing written notice of its intent to do so and a 30-day cure period as required under Section 15 of the MPA.

25. Defendant's improper termination of the Agreement and deactivation of the Kiosks in all 66 of its stores constitutes a violation of the Agreement, which require, among other things, that the Kiosks remain operational, available, and uncovered for use throughout the entire term of the Agreement. As set forth in the Agreement, the initial term is four (4) years.

26. On May 22, 2025, Defendant contacted Plaintiff stating that it planned to reactivate the Kiosks on May 24, 2025, purportedly as a result of the passage of new legislation in the State of Iowa with regard to the operation of Bitcoin ATMs, though this was a date prior to the effective date of the new legislation. However, by May 24, 2025, the Kiosks had remained deactivated for three (3) months.

27. Defendant's termination of the Agreement and deactivation of the Kiosks for three (3) months was wrongful and constitutes a breach of the Agreement.

28. As a result of the foregoing, Plaintiff has sustained, and will continue to sustain, damages, including liquidated damages as set forth in the Agreement and damage to Plaintiff's reputation.

## COUNT I
### (Breach of Contract)

29. Plaintiff repeats and incorporates each of the preceding allegations as if set forth in full herein.

30. On or about April 9, 2024, Plaintiff and Defendant entered into the Agreement, which consists of the MPA and MPAF (the MPAF is incorporated by reference in the MPA). The Agreement is a valid and binding contract.

31. Section 2 of the MPA provides that Defendant is required to, among other things: (i) ensure that each Kiosk shall at all times remain available for use by Plaintiff's customers during normal business hours; (ii) not interfere with the availability or operation of a Kiosk during normal business hours; (iii) ensure that adequate space and sufficient electrical supply (and means to connect that electrical supply to the Kiosk and related signage), is provided to the Kiosks; and (iv) not actually or attempt to cover, obscure, modify, or deface any markings, advertising materials, or other such features of the Kiosks.

32. On or about February 24, 2025, Defendant terminated the Agreement without providing written notice of its intent to do so and a 30-day cure period as required under Section 15 of the MPA.

33. Further, in material breach of the Agreement, Defendant interfered with, disconnected, and deactivated all of Plaintiff's Kiosks located in each of Defendant's 66 locations set forth in Exhibit A to the MPAF. Defendant also covered the Kiosks from public view.

34.     The Kiosks remained deactivated for three (3) months, from February 24, 2025 to May 24, 2025, and the Kiosks were inaccessible and unavailable for use by Plaintiff's customers during that time.

35.     Plaintiff had not breached any of its obligations under the Agreement. Rather, Plaintiff has substantially and materially performed under the Agreement.

36.     As a result of the foregoing, Plaintiff has sustained damages and will continue to sustain damages.

## PRAYER FOR RELIEF

WHEREFORE, and based upon the foregoing, Plaintiff respectfully requests that the Court:

1.      Awarding Plaintiff actual, compensatory and consequential damages;

2.      Awarding Plaintiff its attorneys' fees, costs and disbursements; and

3.      Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: June 9, 2025

**OF COUNSEL**

**RIVKIN RADLER LLP**

David S. Wilck (*pro hac vice forthcoming*)
Gregory D. Miller (*pro hac vice forthcoming*)
Gene Y. Kang (*pro hac vice forthcoming*))
25 Main Street, Suite 501
Court Plaza North
Hackensack, New Jersey 07601
Telephone: 201-287-2460
Facsimile: 201-489-0495

**COOCH AND TAYLOR, P.A.**

*/s/ C. Scott Reese*
C. Scott Reese (#2036)
Kevin D. Levitsky (#7228)
1000 N. West St., Suite 1500
Wilmington, Delaware 19801
Telephone: 302-984-3811
sreese@coochtaylor.com
klevitsky@coochtaylor.com

*Attorneys for Plaintiff,*
*Bitcoin Depot Operating LLC*