**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| BITCOIN DEPOT OPERATING LLC, | ) | |
| | ) | |
| *Plaintiff/Counterclaim-Defendant,* | ) | Case No: 1-25-cv-00721-GBW |
| | ) | |
| v. | ) | |
| | ) | |
| FAREWAY STORES, INC. D/B/A | ) | |
| FAREWAY MEAT AND GROCERY, | ) | |
| | ) | |
| *Defendant/Counterclaim-Plaintiff.* | ) | |
| | ) | |

<u>**OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS PURSUANT TO FED R. CIV. P. 12(b)(6)**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................ 1

PROCEDURAL HISTORY............................................................................................ 2

ARGUMENT ............................................................................................................... 2

   I.    LEGAL STANDARD.......................................................................................... 2

   II.   DEFENDANT FAILS TO ADEQUATELY PLEAD A BASIS FOR DECLARING
        THE AGREEMENTS VOID AB INITIO OR FOR EQUITABLE RECISSION............. 3

   III.  DEFENDANT FAILS TO ADEQUATELY PLEAD COUNTERCLAIMS FOR
        FRAUD AND NEGLIGENT MISREPRESENTATION.................................................. 6

      A.   Fraud ............................................................................................ 6

      B.   Negligent Misrepresentation........................................................... 12

   IV.  THE COURT MUST DISMISS DEFENDANT'S COUNTERCLAIM FOR
        UNJUST ENRICHMENT BECAUSE THE ALLEGATIONS ARISE
        FROM THE SAME FACTUAL BASIS AS DEFENDANT'S
        COUNTERCLAIM FOR BREACH OF CONTRACT. ...................................... 13

   V.   DEFENDANT FAILS TO ADEQUATELY PLEAD A VIOLATION OF THE
        IOWA ONGOING CRIMINAL CONDUCT ACT .......................................... 15

   VI.  DEFENDANT FAILS TO ADEQUATELY PLEAD VIOLATION UNDER
        THE LANHAM ACT FOR FALSE ADVERTISING .................................... 18

      CONCLUSION.................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Audubon Eng'g Co. v. Int'l Procurement & Contracting Grp., LLC*,
   No. No. 13-cv1248, 2015 WL 4084053 (D. Del. July 6, 2015), *aff'd*, 647 F.
   App'x 95 (3d Cir. 2016)..................................................................................................13

*Bd. Dir. Sapphire Bay Condo. West v. Simpson ("Sapphire Bay Condo.")*,
   641 F. App'x 113 (3d Cir. 2015) ...................................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................2

*Buhrke Family Revokable Trust v. U.S. Bancorp.*,
   726 F. Supp.3d 315 (S.D.N.Y. 2024)............................................................................19

*Cantor Fitzgerald, L.P. v. Ainslie*,
   312 A.3d 674 (Del. 2024) ................................................................................................3

*Cantor Fitzgerald, L.P. v. Cantor*,
   724 A.2d 571 (Del. Ch. 1998)........................................................................................13

*Care Investors, Seven, Inc. v. PHP Healthcare Corp.*,
   986 F.2d 1208 (8th Cir. 1993) .......................................................................................16

*Castrol Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993).......................................................................................9, 19

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007)........................................................................................6, 7

*Fusco v. Uber Technologies, Inc.*,
   No. 17-cv-00036, 2018 WL 3618232 (E.D. Pa. July 27, 2018) ..............................9

*Garner v. Global Plasma Solutions Inc.*,
   590 F. Supp.3d 738 (D. Del. 2022)..............................................................................7, 9

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989)..........................................................................................15, 16, 17

*Hiller & Assocs., LLC, v. Garden Fresh Rests., LLC*,
   No. 18-cv-152, 2018 WL 3768989 (D. Del. Aug. 9, 2018)......................................2

*ID Biomedical Corp. v. TM Techs., Inc.*,
   No. 13269, 1995 WL 130743 (Del. Ch. Mar. 16, 1995)....................................13, 14

*JJCK, LLC v. Project Lifesaver Int'l,*
    No. 23-cv-332, 2011 WL 2610371 (D. Del. July 1, 2011) .......................................5

*Kuroda v. SPJS Holdings, LLC,*
    971 A.2d 872 (Del. Ch. 2009).....................................................................................13

law.*" Jackson Nat. Life Ins. Co. v. Kennedy,*
    741 A.2d 377 (Del. Ch. 1999).....................................................................................13

*Lincoln Nat. Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust,*
    28 A.3d 436 (Del. 2011) ...............................................................................................3

*Lion 2004 Receivables Trust v. Lonter Term Preferred Care, Inc.,*
    No. 16-cv-723, 2017 WL 1053100 (D. Del. Mar. 20, 2017)........................................8

*Live Oak Banking Co., v. StreetShares, Inc.,*
    No. 23-cv-332, 2024 WL 3878502 (D. Del. July 24, 2024).........................................5

*LLC v. Photon Interactive UK Ltd.,*
    No. 22-cv-601, 2025 WL 522464 (D. Del. Feb. 18, 2025)...........................................9

*Lum v. Bank of America,*
    361 F.3d 217 (3d Cir. 2004).........................................................................................6

*Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.,*
    125 F. Supp. 3d 497 (D. Del. 2015)..............................................................................2

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997).........................................................................................3

*Nemec v. Shrader,*
    991 A.2d 1120 (Del. 2010) .........................................................................................14

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,*
    653 F.3d 241 (3d Cir. 2011).......................................................................................18

*In re Pivotal Sec. Litig.,*
    No. 19-cv-3589, 2020 WL 4193384 (N.D. Cal. July 21, 2020) .................................19

*REI Holdings, LLC v. LienClear – 0001,*
    No. 18-1401, 2020 WL 6544635 (D. Del. Nov. 6, 2020).........................................14

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
    632 F. Supp.2d 362 (D. Del. 2009)............................................................................18

*Sapp v. Indus. Action Servs., LLC,*
    No. 19-cv-912, 2024 WL 3444633 (D. Del. Jul 17, 2024).........................................8

*In re Student Finance Corp.*,
No. 02-cv-11620, 2004 WL 609329 (D. Del. Mar. 23, 2004) ...........................................6, 12

*Tatis v. Allied Interstate, LLC*,
882 F.3d 422 (3d Cir. 2018) ...........................................................................................2

*United States v. Children's Advocacy Ctr. Of Del.*,
No. 15-cv-442, 2017 WL 4161975 (D. Del. Sept. 20, 2017) ..................................14

*Vichi v. Koninklijke Philips Elecs, N.V.*,
85 A.3d 725 (Del. Ch. 2014) ...............................................................................13

*Walker Manufacturing, Inc. v. Hoffman, Inc.*,
157 F. Supp.2d 1012 (N.D. Iowa 2001) ...............................................15, 16, 17

*Wilkins v. Navy Federal Credit Union*,
2023 WL 239976 (D.N.J. Jan. 18, 2023) ...............................................9, 19

*Wisdom v. First Midwest Bank*,
167 F.3d 402 (8th Cir. 1999) ...............................................................................16

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ...........................................................................................2, 20

18 U.S.C. § 1961(5) ...........................................................................................................16

18 U.S.C. § 1962(c) ...............................................................................................2, 15, 16

IC § 706A.1(5) ...............................................................................................15, 16, 17

IC § 706A.2(5)(a) ...........................................................................................................15

Iowa Code § 533C.1004 ...............................................................................................4

Iowa Code § 706A.2(5) ...............................................................................................15

**Other Authorities**

31 C.F.R. pts. 1010–24 & 1026 ...........................................................................................5

31 C.F.R. § 1010.410(e)(2)(ii) § 1010.100(d)(7) ...............................................5, 6

31 C.F.R. § 1020.220(a)(2)(i)(A) ...........................................................................................5

Fed. R. Civ. P. 9(b) ...........................................................................................................6

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2, 20

## INTRODUCTION

Plaintiff/Counterclaim-Defendant, Bitcoin Depot Operating LLC ("Plaintiff" or "Bitcoin Depot") brought this action against Defendant/Counterclaim-Plaintiff, Fareway Store, Inc. d/b/a Fareway Meat and Grocery ("Defendant" or "Fareway") because Defendant wrongly took self-help by shutting off Plaintiff's Bitcoin ATM's ("Kiosks") at Defendant's locations in direct violation of the parties' Master Placement Agreement ("MPA") and Master Placement Agreement Form ("MPAF", collectively the "Agreements"). Having no defense against breaching the parties' Agreements, Defendant has resorted to injecting tort-based claims, which have no factual or legal basis, into this straightforward breach of contract case.

Defendant's counterclaims allege breach of contract and breach of the implied duty of good faith and fair dealing. Although these claims are specious and seek to re-write the contract with better terms for Defendant than what the parties had agreed to, Plaintiff is not moving to dismiss those claims at this time. However, the other tort-based counterclaims are all subject to dismissal.

Defendant seeks a declaration that the contracts should be voided *ab initio* or alternatively should be rescinded based on fraud. However, Defendant improperly relies on (i) allegations of fraud committed by third parties, not Plaintiff, (ii) statements that constitute opinion and puffery that are not actionable, and (iii) factual allegations *duplicative* of its breach of contract claim.

Defendant's claims for fraud and negligent misrepresentation, as well as its claim under the Lanham Act, also fail as a matter of law. These claims are based on alleged statements made *after* entering the contracts and/or constitute unactionable opinions and puffery.

Defendant's unjust enrichment claim must be dismissed because Defendant seeks relief under a theory of breach of contract on the same basis.

Defendant's claim that Plaintiff violated the Iowa Ongoing Criminal Conduct Act ("IOCCA") should be dismissed because Defendant has not and cannot plead Plaintiff participated

in specified unlawful activity on a continuing basis; specifically, that Plaintiff's actions constitute a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(c).

Accordingly, as discussed in detail below, Defendant's Counterclaims set forth in Count I (Declaratory Judgment), Count II (Fraud), Count V (Unjust Enrichment), Count VI (Ongoing Criminal Conduct – in Violation of Iowa Cod chapter 706A, et seq.), Count VII (False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B), and Count VIII (Negligent Misrepresentation), should be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## PROCEDURAL HISTORY

On June 9, 2025, Plaintiff filed a Complaint against Defendant. (D.I. 1). On August 15, 2025, Defendant filed its Answer, Defenses, Counterclaim, and Jury Demand, along with exhibits A-J. (D.I. 17, 18). On August 27, 2025, Defendant filed its Amended and Supplemental Answer, Defenses, Counterclaim, and Jury Demand (hereinafter "Am. Counterclaim"). (D.I. 23).

## ARGUMENT

### I.    LEGAL STANDARD

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018). "The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a 'formulaic recitation' of the claim elements." *Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.*, 125 F. Supp. 3d 497, 499 (D. Del. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Accordingly, "[w]hile the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, 'bald assertions,' and 'legal conclusions.'" *Hiller & Assocs., LLC, v. Garden Fresh Rests., LLC*, No. 18-

cv-152, 2018 WL 3768989, at \*5 (D. Del. Aug. 9, 2018) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## II.    DEFENDANT FAILS TO ADEQUATELY PLEAD A BASIS FOR DECLARING THE AGREEMENTS VOID AB INITIO OR FOR EQUITABLE RECISSION.

Delaware courts declare contracts void *ab initio*, as opposed to being voidable, only if they "offend public policy or harm the public." *Lincoln Nat. Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust*, 28 A.3d 436, 441 (Del. 2011). The contracts must be "so egregiously flaw[ed] that they are void at outset." *Id.* at 441. That is because "[w]hen parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract. Such public policy interests are not to be lightly found, as the wealth-creating and peace-inducing effects of civil contracts are undercut if citizens cannot rely on the law to enforce their voluntarily-undertaken mutual obligations." *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674, 689 (Del. 2024) (internal citations omitted).

Here, Defendant alleges that the Agreements should be declared void *ab initio* because Plaintiff has allowed its Kiosks to be operated as instrumentalities of fraud and other activity that is illegal or prohibited under state and federal law and contrary to state and federal regulations, and that Plaintiff knew or had reason to know that the Kiosks would be operated in this matter. (Am. Counterclaim at ⁋135). These allegations should be rejected.

First, Defendant fails to allege that the parties' performance under the Agreements is illegal, fraudulent, or harmful to the public. Defendant's claim is based on alleged scams, perpetrated by third parties, and not by Plaintiff, in contravention of Plaintiff's warnings and protocols designed to minimize such activity. And, regardless of whether Defendant believes the compliance programs are not "robust," it acknowledges Plaintiff maintains them, which is what is

required under the MPA. Significantly, there has been no judicial finding of any fraud, scam or illegal activity committed by Plaintiff. Further, Plaintiff's claim is based on an unspecified amount of alleged scam transactions, with no factual allegations showing how such transactions compare to the total number of bona fide transactions on the Kiosks. Indeed, under Defendant's theory, any contract with a bank, money transfer service, broker/dealer, or similar business, that is alleged to have some amount of scams committed through its services could be subject to being void *ab initio*. Accordingly, declaring the Agreements to be void *ab initio* based on the foregoing allegation would be inappropriate and inequitable.

Second, as Defendant acknowledges, the Iowa statute (Iowa Code § 533C.1004) it alleges Plaintiff violated did not become effective until July 1, 2025, over one year after entering into the Agreements. Until then, as Defendant acknowledges, there were no similar laws or regulations in Iowa relating to the operation of the Kiosks, and thus, none that could have been violated. While Defendant alleges that a single purported scam occurred in November 2024, (*see* Am. Counterclaim at ¶65), and conclusorily alleges that scams occurred between February 6, 2025, and February 22, 2025, (*see* Am. Counterclaim at ¶78), it fails to allege any violation of Iowa law by Plaintiff prior to July 1, 2025, and thus, Plaintiff could not have violated Iowa public policy.

Third, the alleged violations of Iowa Code § 533C.1004 after July 1, 2025 (such as allegedly allowing customers to deposit more than $1,000 per day) are conclusorily pled. But, assuming the truth of these allegations solely for the purposes of this motion, they do not adequately allege a violation of public policy. At best, such alleged incidents could cause the Agreements to be voidable, but they do not provide an adequate basis to declare them void at inception. However, assuming *arguendo* that the Agreements are voidable instead of void ab initio under Defendant's request for equitable recission, the declaratory judgment claim is duplicative of

Defendant's breach of contract claim, since both claims seek the same relief. Therefore, the declaratory judgment claim should be dismissed. *See Live Oak Banking Co.*, *v. StreetShares, Inc.*, No. 23-cv-332, 2024 WL 3878502, at *6 (D. Del. July 24, 2024), adopted by 2024 WL 3875782 (D. Del. Aug. 20, 2024) (Courts may "dismiss a claim for declaratory judgment if such relief would serve no useful purpose. . . . [such as] if the dispute would be resolved by another claim in the case. . . . Defendants' motion to dismiss Count I [should] be granted because it would resolve the same factual and legal issues that will be adjudicated in [its] breach of contract claim."); *JJCK, LLC v. Project Lifesaver Int'l*, No. 23-cv-332, 2011 WL 2610371, at *6 (D. Del. July 1, 2011).

Fourth, Defendant references allegations contained in a lawsuit filed by the Attorney General of Iowa to allege that Plaintiff allows illegal activities. However, that action remains pending. Plaintiff continues to dispute the allegations therein, and significantly, there has been no dispositive finding that Plaintiff violated any Iowa law related to the operation of the Kiosks.

Fifth, Defendant's allegations regarding the purported federal regulations that Plaintiff violated are misleading because those regulations do not apply to Plaintiff. The Customer Due Diligence Requirements for Financial Institutions, *see* 31 C.F.R. pts. 1010–24 & 1026, do not apply to Plaintiff because they only apply to banks, brokers or dealers in securities, mutual funds, and futures commission merchants and introducing brokers in commodities. *See* 81 FR 29398 at n.3 (available at: https://www.federalregister.gov/documents/2016/05/11/2016-10567/customer-due-diligence-requirements-for-financial-institutions#citation-3-p29398). Plaintiff, which is a money services business, does not fall under the foregoing categories. Further, the FinCEN Customer Identification Program Requirements for Banks, *see* 31 C.F.R. § 1020.220(a)(2)(i)(A), applies to banks, not money services businesses. *See* 31 C.F.R. § 1020.220(a). The definition of a "bank" expressly excludes a "money services business." 31 C.F.R. § 1010.100(d)(7). 31 C.F.R. §

5

1010.410(e)(2)(ii) pertaining to "Records to be made and retained by financial institutions," does apply to nonbank financial institutions, such as money services businesses, but Defendant fails to allege that Plaintiff violated this regulation. 31 C.F.R. § 1010.410(e)(2)(ii) requires verification of identity with respect to transmittal of funds in the amount of $3,000 or more, which Defendant acknowledges Plaintiff does, beginning with amounts even below that threshold, *i.e.,* starting with Tier Two of Plaintiff's KYC program for transmittal of funds between $251-$2,999. (*See* Am. Counterclaim at ¶¶101, 105).

Accordingly, Defendant fails to adequately allege that the Agreements offend public policy or harm the public, and thus, should be declared void *ab initio*. Further, the aspect of Defendant's counterclaim seeking equitable recission is duplicative of its breach of contract counterclaim. Therefore, Defendant's declaratory judgment counterclaim should be dismissed.

## III.    DEFENDANT FAILS TO ADEQUATELY PLEAD COUNTERCLAIMS FOR FRAUD AND NEGLIGENT MISREPRESENTATION.

### A.    Fraud

"Under Delaware law, to state a claim of common law fraud a plaintiff must plead: 1) a false representation made by the defendant, usually one of fact; 2) the defendant's knowledge or belief that the statement was false; 3) an intent to induce the plaintiff to act; 4) the plaintiff's justifiable reliance upon the representation; and 5) damage to the plaintiff as a result." *In re Student Finance Corp.*, No. 02-cv-11620, 2004 WL 609329, at *3 (D. Del. Mar. 23, 2004). "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of America*, 361 F.3d 217, 223–24 (3d Cir. 2004)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure

of substantiation into a fraud allegation" *Id.* Defendant fails to do so here because it fails to plead with specificity, when or where certain alleged misrepresentations were made, and in fact, many statements appear to have been made after signing the MPA. Further: (i) Defendant improperly attempts to bootstrap its breach of contract claim into a claim of fraud, which causes the fraud claim to be duplicative; and (ii) many of the alleged misrepresentations constitute opinion and/or puffery contained in Plaintiff's marketing materials, such as a PowerPoint presentation provided during a sales pitch ("Ex. B PowerPoint"), which are not actionable as fraud.

The first alleged statement "[t]hat Bitcoin Depot operated its Bitcoin Depot ATMs in a 'highly regulated' industry and that its Bitcoin ATMs and the transactions conducted through its ATMs were also highly regulated" is an opinion that is not actionable as fraud. (Am. Counterclaim at ¶140(a)). In fact, Defendant acknowledges throughout the Counterclaim that the industry is regulated, and its subjective interpretation of the word "highly" does not make the statement fraud. *See Nye Odorless Incinerator Corp. v.* Felton, 35 Del. 236, 253 (1931) (while there are exceptions, "[g]enerally, fraud cannot be predicated upon the mere expression of opinion which is understood to be only as such nor upon mere representations of matters of estimate or judgment."); *Garner v. Global Plasma Solutions Inc.*, 590 F. Supp.3d 738, 744 (D. Del. 2022) ("[a]ctionable statements misstate 'material facts' that can be measured or known. . . . Mere 'estimate[s] or opinion[s] or puffing' are not actionable.") (internal citations omitted). Moreover, information regarding regulations in the industry is publicly available, and it is not plausible that Defendant, a sophisticated corporation, justifiably relied upon this statement to its detriment when entering into the MPA. Defendant further only alleges with specificity that Plaintiff made this statement in an affidavit, dated February 9, 2024, filed in a separate lawsuit, and Defendant fails to plausibly allege that it reviewed and relied on it in connection with the MPA. (*See* Am. Counterclaim at ¶41 n.3).

The alleged second statement "[t]hat Bitcoin Depot had 'robust compliance procedures' that made transactions conducted through its Bitcoin ATMs safe, secure and legal," is essentially a statement that Plaintiff would perform its obligations under the MPA, *i.e.,* that it would "maintain . . . compliance program[s]," "take reasonable steps to ensure that the Kiosks are secure," and comply with applicable law. (*See id.*, 140(b); Ex. C [MPA] at ₱₱5, 22-23, D.I. 17-2). Accordingly, Defendant improperly seeks to bootstrap its breach of contract claim into a claim of fraud. *See Sapp v. Indus. Action Servs., LLC*, No. 19-cv-912, 2024 WL 3444633, at *3 (D. Del. Jul 17, 2024) ("a plaintiff cannot bootstrap a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations. . . . [such a] claim that arises from the same facts as an accompanying contract claim, seeks identical damages, and does not allege a breach of any duty collateral to or independent of the parties' agreements is subject to dismissal as redundant of the contract claim. . . . the alleged misrepresentation must be distinct from merely representing the party's intent to perform under the contract.") (internal citations and quotations omitted); *Lion 2004 Receivables Trust v. Lonter Term Preferred Care, Inc.*, No. 16-cv-723, 2017 WL 1053100, at *3 (D. Del. Mar. 20, 2017) ("where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort. . . .  plaintiffs may not 'bootstrap' a claim of fraud onto a breach of contract claim by merely including the words 'fraudulently induced.'") (internal citations and quotations omitted). Additionally, Defendant fails to plead with specificity that this statement was made prior to entering into the MPA. It is not contained in the Ex. B PowerPoint, and Defendant non-specifically and conclusorily alleges that it was a part of Bitcoin Depot's sales pitch, which is insufficient. (*See* Am. Counterclaim at ₱43). The only place Defendant alleges with specificity that Plaintiff made the statement was in a letter dated January

10, 2025, which was after entering into the MPA. (*See id.* at ¶73). In all events, the statement also constitutes unactionable puffery and/or opinion. Defendant acknowledges that Plaintiff maintained compliance policies, and Defendant's subjective opinion as to whether it considers it "robust" does not make the statement fraud. *See Garner*, 590 F. Supp.3d at 744; *Purple innovation, LLC v. Photon Interactive UK Ltd.*, No. 22-cv-601, 2025 WL 522464, at *3 (D. Del. Feb. 18, 2025) ("Under Delaware law, a person's optimistic statements about his 'skills, experience, and resources' are 'mere puffery and cannot form the basis for a fraud claim.'") (internal citations omitted); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) ("Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language."); *Fusco v. Uber Technologies, Inc.*, No. 17-cv-00036, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018) ("a claim that a product is 'safe' generally . . . is puffery because it conveys only the seller's judgment that the risk is low enough to be called 'safe.' . . . '[Y]ou're surrounded by advanced features designed to keep you safe and secure' . . . [is] mere puffery and as such [is] not actionable.'") (internal citations omitted); *Wilkins v. Navy Federal Credit Union*, 2023 WL 239976, at *16 (D.N.J. Jan. 18, 2023) (holding statements that money transfer service, Zelle, is a "safe" and "secure" application for sending money were non-actionable under NJFCA because court routinely finds statements concerning safety, durability and reliability to be mere puffery and "general statement of Defendant's subjective belief").

There are similar issues with the remaining alleged misrepresentations, which are set forth in the table below:

| "That Bitcoin Depot's compliance team and compliance policies, procedures, and personnel were leading the industry in crypto regulations[.]" (Am. Counterclaim at ¶140(d)). | This statement is misquoted from the Ex. B PowerPoint, and Defendant fails to allege with specificity where and when Plaintiff made this statement. The Ex. B PowerPoint actually states "[o]ur Compliance team leads the industry in crypto regulations," which constitutes |

| | unactionable opinion and/or puffery. (*Id.* at Ex. B, D.I. 17-2). |
|---|---|
| "That Bitcoin Depot's 'robust compliance system' had: i. Dedicated in-house compliance teams; ii. Multiple state-of-the-art compliance management tools; iii. Continuous training and development; iv. Independent testing and updating of Bank Secrecy Act and Anti-Money Laundering practices; and v. Rigorous customer due diligence on all transactions[.]" (*Id.* at ¶140(d)). | This statement is misleading because it conflates "robust compliance system," which is not contained in the Ex. B PowerPoint, with other statements that are. And, as discussed above, Defendant fails to plead with specificity where and when Plaintiff stated it has a "robust compliance system" prior to entering into the MPA. In all events, these statements are unactionable opinion and/or puffery. Additionally, Defendant fails to allege with specificity how the statements regarding Plaintiff having a dedicated in-house compliance team, multiple state-of-the-art compliance management tools, continuous training and development, etc., are false. The conclusory and unsupported allegation that the statement is "demonstrably and intentionally false and contradicted Bitcoin Depot's internal communications and representations to regulators" is insufficient, particularly since none of the express representations referenced in the pleading address or contradict the above statement. (*Id.* at ¶51). |
| "That Bitcoin Depot, through its policies and procedures, ensured that transactions made through its Bitcoin ATMs were 'safe and secure[.]'" (*Id.* at ¶140(f)). | As discussed above, these are express obligations in the MPA, and Defendant improperly seeks to bootstrap its breach of contract claim into a claim of fraud. (*See id.*, Ex. C [MPA] at ¶¶5, 22-23, D.I. 17-2). Further, Defendant fails to adequately allege that Plaintiff made this statement, which was in a blog post, with the intent to deceive Defendant and induce it to enter into the MPA, and that Defendant justifiably relied on it. Moreover, as discussed above, this statement constitutes unactionable opinion and/or puffery. |
| "That Bitcoin Depot required all customers to complete Know Your Customer verification to prevent unauthorized or fraudulent transactions." (*Id.* at ¶140(g)). | Defendant fails to allege with specificity when or where Plaintiff made this statement, and thus, fails to allege that it was made prior to and for the purpose of inducing Defendant into signing the MPA. Additionally, Defendant fails to adequately allege how this statement is false, as Defendant acknowledges that Bitcoin Depot had a KYC program, which it required its customers to comply with. (*See id.* at ¶¶88-111). Regardless of whether Defendant disagreed with Plaintiff's KYC program, that does not make this statement false or fraudulent. |
| "That Bitcoin Depot complied with all relevant Know Your Customer and Anti- | This statement is an express obligation contained in the MPA, which causes Defendant's fraudulent inducement claim to be duplicative of its breach of contract claim. |

| | |
|---|---|
| Laundering laws and regulations." (*Id.* at ¶140(g)). | (*See id.*, Ex. C [MPA] at ¶¶5, 22-23, D.I. 17-2). Defendant also fails to allege that Plaintiff made this statement prior to entering into the MPA. Further, Defendant fails to adequately allege how this statement is false. As discussed *supra* at Section II, the federal regulations referenced in the pleadings either do not apply to Plaintiff or Defendant fails to allege that Plaintiff did not comply. |
| "That by following the Know Your Customer and Anti-Money Laundering laws and regulations, Bitcoin Depot was 'doing its part' to prevent the use of Bitcoins purchased through its Bitcoin ATMs for illegal activities[.]" (*Id.* at ¶140(h)). | The statement that Plaintiff was "doing its part" to prevent the use of Bitcoins purchased through its Bitcoin ATMs for illegal activities constitutes unactionable opinion and/or puffery. Defendant also fails to adequately allege that Plaintiff made this statement, which was in a blog post, with the intent to deceive Defendant and induce it to enter into the MPA, and that Defendant justifiably relied on it. Moreover, Defendant fails to adequately allege that the statement is false, *i.e.,* that Plaintiff was not "doing its part" to prevent illegal activities. |
| "That Bitcoin Depot ATMs have never been involved in any kind of fraudulent activity or scandal[.]" (*Id.* at ¶140(i)). | Defendant fails to adequately allege that Plaintiff made this statement, which was in a blog post, with the intent to deceive Defendant and induce it to enter into the MPA, or that Defendant justifiably relied on it. Defendant also fails to allege with specificity how this statement was false when it was allegedly made in November 2023 before the MPA. There was no judicial finding that Plaintiff has been involved in any fraud or scandal, and Defendant's claim appears to be based on unproven and unadjudicated allegations alleged to have occurred after that date and signing the MPA. |
| "That users could feel confident in their transactions with Bitcoin Depot because of its compliance system, procedures, policies and personnel." (*Id.* at ¶140(j)). | Defendant fails to adequately allege that Plaintiff made this statement, which was in a blog post, with the intent to deceive Defendant and induce it to enter into the MPA, and that Defendant justifiably relied on it. In all events, this statement is an unactionable opinion and/or puffery. |
| "That hosts of Bitcoin Depot's Bitcoin ATMs could trust that Bitcoin Depot's 'robust' compliance system would be a positive experience such that the host would see increased traffic come into their locations[.]" (*Id.* at ¶140(k)). | This allegation is misleading because it does not appear anywhere as a representation by Plaintiff as written but rather separately in different contexts. Accordingly, Defendant fails to allege that the statement was in fact a misrepresentation made by Plaintiff with the intent to induce Defendant to enter into the MPA and that Defendant justifiably relied on it. Additionally, the statements that Plaintiff is a "trusted" Bitcoin ATM network (which is alleged to be on Bitcoin Depot's |

| | website), Plaintiff has a "robust compliance system" (which was made after entering into the MPA), and Plaintiff's "Customer Support team ensures customers have a positive experience with every transaction" and that the its "customized marketing support drives foot traffic through your doors," and similar statements (which are contained in the Ex. B PowerPoint), are unactionable opinion and/or puffery. |
|---|---|
| "That Bitcoin Depot would maintain Anti-Money Laundering, Know Your Customer, and Bank Secrecy Act compliance policies, procedures and programs[.]" (*Id.* at ¶140(l)). | Similar to Paragraph 140(g), this statement is an express obligation contained in the MPA, and thus, Defendant's fraud claim is duplicative of its breach of contract claim. (*See id.*, Ex. C [MPA] at ¶5, D.I. 17-2). Further, Defendant fails to allege how this statement is false because as Defendant acknowledges, Plaintiff did maintain the referenced policies, which they received from Plaintiff. (*See id.* at ¶¶88-11). |
| "That Bitcoin Depot was in good standing and would be in good standing in all jurisdictions (including Iowa) without violation of applicable law, rule, regulation or other legal authority[.]" (*Id.* at ¶140(m)). | This too is an express obligation in the MPA, which causes Defendant's fraudulent inducement claim to be duplicative of its breach of contract claim. (*See id.*, Ex. C [MPA] at ¶¶22-23, D.I. 17-2). Defendant also fails to allege that the statement was false prior to entering into the MPA. |
| "That Bitcoin Depot would be exclusively responsible for all aspects of compliance with any local, state or federal law or regulation with regard to the operation of its Bitcoin ATMs in Fareway's stores[.]" (*Id.* at ¶140(n)). | This is an express obligation in the MPA, which causes Defendant's fraudulent inducement claim to be duplicative of its breach of contract claim. (*See id.*, Ex. C [MPA] at ¶¶22-23, D.I. 17-2). |

Accordingly, Defendant fails to adequately plead a counterclaim for fraud, and it should be dismissed.

## B. Negligent Misrepresentation

"The only difference between an action for fraud and negligent misrepresentation is that, with a claim of negligent misrepresentation, the plaintiff need not plead that the defendant knew or believed that his or her statement was false or that he or she proceeded in a reckless disregard for the truth." *In re Student Finance Corp.*, 2004 WL 609329 at *3.

As discussed above, Defendant's counterclaim for fraud fails because it is an attempt to assert a tort claim that arises from the breach of contract counterclaim. The same logic applies to

12

the allegation of negligent misrepresentation. *See Audubon Eng'g Co. v. Int'l Procurement & Contracting Grp., LLC*, No. No. 13-cv1248, 2015 WL 4084053, at *4 (D. Del. July 6, 2015), *aff'd*, 647 F. App'x 95 (3d Cir. 2016) (quoting *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 889 (Del. Ch. 2009)) (granting summary judgment on negligence claim because it was impermissible attempt to turn a contract claim into a tort claim). Here, Defendant alleges that Plaintiff supplied it false information "in their business transactions." (Am. Counterclaim, ¶222). The "business transactions" referenced are the Agreements entered into between the parties, including the MPA and the "false information" is the alleged misrepresentations contained in the MPA. Accordingly, this claim is duplicative of Defendant's claim for breach of contract.

Further, as argued above, the purported misrepresentations contain nothing more than puffery or opinion, which are not actionable. *See Vichi v. Koninklijke Philips Elecs, N.V.*, 85 A.3d 725, 775 (Del. Ch. 2014) ("[T]he misrepresentation forming the basis for the fraud or negligent misrepresentation claim must be material, and the plaintiff generally cannot rely, for example, on puffery, expressions of mere opinion, or representations that are obviously false."). Accordingly, Defendant's negligent misrepresentation counterclaim must be dismissed.

## IV.    THE COURT MUST DISMISS DEFENDANT'S COUNTERCLAIM FOR UNJUST ENRICHMENT BECAUSE THE ALLEGATIONS ARISE FROM THE SAME FACTUAL BASIS AS DEFENDANT'S COUNTERCLAIM FOR BREACH OF CONTRACT.

Under Delaware law, an unjust enrichment claim requires "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.*" Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393-94 (Del. Ch. 1999) (citing *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998)). "Courts developed unjust enrichment, or quasi-contract, as a theory of recovery to remedy the absence of a formal contract." *ID Biomedical Corp. v. TM Techs.,*

*Inc.*, No. 13269, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995). Thus, a party cannot "seek recovery under an unjust enrichment theory if a contract is the measure of the plaintiff's right." *Id.* at *15. Delaware courts "have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). For both an unjust enrichment and breach of contract claim to survive a motion to dismiss, "the plaintiff must plead adequate factual support *for each theory*." *REI Holdings, LLC v. LienClear – 0001*, No. 18-1401, 2020 WL 6544635, at *10 (D. Del. Nov. 6, 2020) (emphasis added.). The Court will dismiss an unjust enrichment claim where the plaintiff fails to plead that absent the claim, "it will have no remedy to recover the benefit of which they were wrongfully deprived." *United States v. Children's Advocacy Ctr. Of Del.*, No. 15-cv-442, 2017 WL 4161975, at *3 (D. Del. Sept. 20, 2017).

Here, Defendant seeks damages under the theory that Plaintiff breached the MPA and MPAF by failing to perform its obligations. (Am. Counterclaim, Count III, Breach of Contract). Simultaneously, Defendant alleges that Plaintiff was unjustly enriched after it received the benefits of the MPA and MPAF and did not perform its obligations. (Am. Counterclaim at ¶180). The unjust enrichment claim stems directly from the contractual relationship between Plaintiff and Defendant under the Agreements. Moreover, the factual support for each theory is the same, and thus inadequate, because both allegations are based on Plaintiff's obligations under those Agreements. Accordingly, Defendant's unjust enrichment claim must be dismissed because Defendant already seeks relief under a theory of breach of contract on the same basis.

## V.    DEFENDANT FAILS TO ADEQUATELY PLEAD A VIOLATION OF THE IOWA ONGOING CRIMINAL CONDUCT ACT

Fareway alleges in its Counterclaim Count VI that Bitcoin Depot violated the Iowa Ongoing Criminal Conduct Act ("IOCCA"), specifically IC § 706A, et seq.§ 706A.2(5). (*See* Am. Counterclaim at ¶ 201). This section of the IOCCA states:

> It is unlawful for a person to negligently allow property owned or controlled by the person or services provided by the person other than legal services, to be used to facilitate specified unlawful activity, whether by entrustment, loan, rent, lease, bailment, or otherwise.

IC § 706A.2(5)(a). In support of this claim, Defendant alleges that Plaintiff's Kiosks and the services it provides in selling and transferring bitcoins are used to facilitate "specified unlawful activity in violation of Iowa Code § 706A.2(5). (*See* Am. Counterclaim at ¶201).

"Specified unlawful activity" is defined under the IOCCA as "any act, including any preparatory or completed offense, committed for financial gain ***on a continuing basis***, that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state."  IC § 706A.1(5) (emphasis added).

In determining whether "specified unlawful activity" has occurred on a "continuing basis," Iowa courts require plaintiff to allege defendant's actions constitute a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(c). In explaining Iowa's "continuing basis" standard, the court in *Walker Manufacturing, Inc. v. Hoffman, Inc*., 157 F. Supp.2d 1012, 1018 (N.D. Iowa 2001), stated:

> . . . the Iowa Supreme Court held that 'given the similarity between the underlying purposes of RICO and Iowa Code chapter 706A, we think the interpretation given to 'pattern of racketeering activity' by the United States Supreme Court in *H.J., Inc.* is a reasonable one for ***'continuing basis' in section § 706A.1(5)*** [defining 'specified unlawful activity'].'  Id. at 335.

*Id.* (emphasis added) (holding plaintiff could not show that the unlawful activity underlying its IOCCA claim occurred or will occur on a "continuing basis" as required under Iowa law). Accordingly, to establish a "continuing basis" for purposes of Iowa Code § 706A.1(5), plaintiff must allege a "pattern of racketeering activity," as set forth in 18 U.S.C. § 1962(c).

> To do so, the plaintiff must show at least two related predicate acts which amount to or pose a threat of continued criminal activity. *See* 18 U.S.C. § 1961(5). To be related predicate acts, they must not be isolated events and must share distinguishing characteristics. *See United HealthCare Corp.,* 88 F.3d at 571–72. **To show continued criminal activity, they can be either closed-ended or open-ended**.

*See id.* (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 241 (1989)). Citing the Supreme Court, the *Walker* court described the distinction between closed- and open-ended continuity as follows:

> A party alleging a RICO violation may demonstrate **continuity over a closed period** by proving a series of related predicates extending **over a substantial period of time**. **Predicate acts extending over a few weeks or months** and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

*Walker*, 157 F. Supp.2d at 1016 (citing *H.J. Inc.,* 492 U.S. at 242). Tellingly, the Eighth Circuit found a six-month period and eleven-month period too short to satisfy the closed-ended analysis of the pattern requirement. *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 407 (8th Cir. 1999) (six-month period too short); *Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215, 1215-16 (8th Cir. 1993) (holding eleven months insufficient to satisfy the closed-ended continuity requirement and noting that other Circuits consistently hold that schemes less than one year are too short).

16

"To demonstrate open-ended continuity, the plaintiff may show predicate acts which 'by [their] nature project[ ] into the future with a threat of repetition.'" *Walker*, 157 F. Supp.2d at 1017 (citing *H.J., Inc.,* 492 U.S. at 241).

> Open-ended continuity will be established if the predicate acts themselves involve an actual threat of ***long-term racketeering activity***, either implicit or explicit. *See id. at* 242–43, 109 S.Ct. 2893. To illustrate this principle, the Supreme Court offered the following example: "Suppose a hoodlum were to sell 'insurance' to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the 'premium' that would continue their 'coverage.'"

*Walker*, 157 F.Supp.2d at 1017 (emphasis added). Defendant has not alleged and is unable to allege either closed-ended continuity or open-ended continuity. Defendant has alleged only a single "act" under IC § 706A.1(5), which regards the purported loss on November 6, 2024 of $12,000 by Sonya Claman. (*See* Am. Counterclaim at ¶64). Other than this single act, Fareway does not allege any other specific act under § 706A.1(5).

Defendant makes a non-specific allegation at ¶78 of its Counterclaim that "[b]etween February 6, 2025, and February 22, 2025, Fareway continued to observe illegal scam transactions taking place on the Bitcoin Depot Biotcoin ATMs in its stores." (*See* Am. Counterclaim at ¶78). This non-specific allegation does not meet the requirements of establishing a 'pattern of racketeering activity,' as required by § 706A.1(5), and in all events, is only during a 16-day period, which falls woefully short of alleging either closed-ended continuity or open-ended continuity.

Defendant also cannot rely on its allegations concerning the Iowa Attorney General's lawsuit against Plaintiff to plead closed-ended continuity or open-ended continuity. (*See* Am. Counterclaim at ¶¶112–16). Those allegations are not specific to Plaintiff and Defendant cannot possibly have any damages arising therefrom. *See* § 706A.2(5)(b) ("Damages for negligent empowerment of specified unlawful activity shall include all reasonably foreseeable damages

17

proximately caused by the specified unlawful activity[.]"). Further, the Iowa Attorney General lawsuit regards claims from October 10, 2021 to July 26, 2024, which is prior to when Plaintiff and Defendant first entered the MPA on April 9, 2024 (which is 3 ½ months before the last purported act in the Attorney General's lawsuit). This is far too short of a time period to establish either closed-ended continuity or open-ended continuity.

Accordingly, Defendant fails to allege Plaintiff participated in specified unlawful activity on a continuing basis, and therefore Amended Counterclaim Count VI should be dismissed.

## VI. DEFENDANT FAILS TO ADEQUATELY PLEAD VIOLATION UNDER THE LANHAM ACT FOR FALSE ADVERTISING

The Third Circuit requires that:

> [t]o establish a false advertising claim under the Lanham Act, a plaintiff must prove: 1) that the defendant has made false or misleading statements as to his own product or another's; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011). Plaintiff must show that a contested statement was either "(1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers." *Bd. Dir. Sapphire Bay Condo. West v. Simpson ("Sapphire Bay Condo.")*, 641 F. App'x 113, 114 (3d Cir. 2015) (internal citations omitted). The Third Circuit distinguishes between statements of fact capable of being proven false and statements of opinion and puffery, which are non-actionable because reasonable consumers would not reasonably rely on such claims as statements of objective fact. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp.2d 362, 366 (D. Del. 2009) ("Only statements of fact capable of being proven false are actionable under the Lanham Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator

believes the statements, not that the statement is true.") (internal citation omitted). "'[M]isdescriptions or false representations of specific characteristics of a product,' which are actionable under the Lanham act, are distinguished from puffery, which is not actionable." *Id.* (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)).

Here, the statements alleged in Paragraph 214 of the Amended Counterclaim, such as Plaintiff uses "'cutting edge technology", employs "robust" security measures, that its "Know Your Customer and Anti-Money Laundering regulations are integral to maintaining the integrity of the cryptocurrency industry," and that Plaintiff "provides trust and security to its customers" are exactly the type of statements that constitute opinion and/or puffery that are not objectively verifiable, and therefore, not actionable as misrepresentations of fact. *See, e.g., In re Pivotal Sec. Litig.,* No. 19-cv-3589, 2020 WL 4193384, at *7 (N.D. Cal. July 21, 2020) (finding "[s]tatements classifying [defendant's product] as providing a 'cutting-edge,' [and] 'leading,' and 'turnkey cloud-native platform'" not actionable because they are "vague assessments that represent the 'feel good' speak that characterizes non-actionable puffing") (internal quotations omitted); *Buhrke Family Revokable Trust v. U.S. Bancorp.*, 726 F. Supp.3d 315, 340 (S.D.N.Y. 2024) (holding that statements emphasizing trust customers place in bank, importance of trust for bank's success, and bank's record of ethical business practices constituted inactionable puffery); *Wilkins v. Navy Federal Credit Union*, 2023 WL 239976, at *16 (D.N.J. Jan. 18, 2023) (holding statements that money transfer service is "safe" and "secure" is unactionable puffery).

The remaining alleged misrepresentations cannot form the basis of Defendant's Lanham Act counterclaim because Defendant fails to show that they are false. Defendant alleges that Plaintiff stated it "requires customers to complete a [KYC] verification process that prevents unauthorized or fraudulent transactions." (Am. Counterclaim at ¶214). Defendant acknowledges

that Plaintiff maintains a KYC policy and fails to allege that it does not require customers to complete the process. (*See id.* at ¶¶88-111). Regardless of whether Defendant believes the policy to be inadequate, that does not make the above statement false. Further, Defendant fails to allege, because it cannot, that the KYC policy prevents fraudulent transactions. Merely alleging that some, non-specific amount of fraudulent transactions occur despite the policy does not mean that the policy does not otherwise prevent numerous other fraudulent transactions. Additionally, Defendant alleges Plaintiff misrepresents that it complies with all KYC and anti-money laundering regulations, but as discussed *supra* at Section II, the KYC and other regulations alleged to have been violated by Plaintiff either do not apply to it or Defendant fails to allege Plaintiff failed to comply. Thus, Defendant has failed to allege the statement is false.

Defendant also alleges that Plaintiff misrepresented that it has never been involved in any kind of "fraudulent activity or scandal." (*See id.* at ¶214). However, there has been no judicial finding that Defendant has been involved in any fraudulent activity or scandal, and Defendant's claim that the above statement is false is grounded in unproven and unadjudicated allegations in Defendant's pleading and the Iowa Attorney General's complaint. Accordingly, Defendant fails to allege, because it cannot, that the statement is a misrepresentation. Until and unless there is such a finding, a counterclaim for false advertising based on this statement is not ripe.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court dismiss Count I (Declaratory Judgment), Count II (Fraud), Count V (Unjust Enrichment), Count VI (Ongoing Criminal Conduct – in Violation of Iowa Cod chapter 706A, et seq.), and Count VII (False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B), and Count VIII (Negligent Misrepresentation) of the Amended Counterclaim, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), and grant such other and further relief as the Court deems just and proper.

Dated: September 17, 2025

COOCH AND TAYLOR, P.A.

*s/ C. Scott Reese*
C. Scott Reese (#2036)
Kevin D. Levitsky (#7228)
1000 N. West St., Suite 1500
Wilmington, Delaware 19801
Telephone: 302-984-3811

OF COUNSEL

RIVKIN RADLER LLP
David S. Wilck (*pro hac vice*)
Gregory D. Miller (*pro hac vice*)
Gene Y. Kang (*pro hac vice*)
25 Main Street, Suite 501
Court Plaza North
Hackensack, New Jersey 07601
Telephone: 201-287-2460
Facsimile:  201-489-0495

*Attorneys for Plaintiff,*
*Bitcoin Depot Operating LLC*